UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| DEVONTE ABBAS, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF HOBART, INDIANA, <br><br> Defendant. | Case No. 2:21-CV-150-GSL-APR |

**OPINION AND ORDER**

Devonte Abbas is suing the City of Hobart alleging that its failure to properly supervise or train its police officers subjected him to an unconstitutional police encounter. After the close of discovery, the City moved for summary judgment. After a thorough review of the written briefs, and following an extensive oral argument, this Court finds in favor of Defendant and grants Defendant's Motion for Summary Judgment for the following reasons.

**Factual Background**

On the evening of May 8, 2019, Plaintiff Devonte Abbas was driving to his mother's house in Hobart, Indiana. He was driving 5-10 miles per hour below the speed limit in a car with Illinois license plates. While traveling east on Old Ridge Road, Abbas noticed a Hobart Police car, driven by Officer Brandon Kissee, directly behind him. After about a mile, he turned left onto North Lake Park Avenue and Officer Kissee followed. Abbas, now heading north, drove past his mother's street: Lukes Court. He turned into an apartment complex to turn around. Officer Kissee parked across the street to observe. About 30 seconds later, Abbas exited the complex, turning back onto North Lake Park Avenue heading towards Lukes Court. Officer Kissee initiated a traffic stop as Abbas turned onto Lukes Court. The time was 8:19 p.m.

When he pulled over, Abbas positioned his cell phone so that its camera was facing the driver's side window and he started a video recording. Officer Kissee approached the vehicle and asked Abbas if he was lost, where he was headed, and why he turned into the apartment complex. Abbas replied that he was going to his mother's house, and that he initially missed the turn onto Lukes Court, which is why he turned his signal on, and then off. Officer Kissee expressed his belief that it was out-of-the-ordinary for one to miss such a turn while going only 25 miles per hour, and he asked Abbas for his driver's license and registration. Abbas turned over his license, and he started to reach into his pockets. Officer Kissee asked if Abbas carried his registration in his pocket, and Abbas responded that he was trying to get his insurance. Officer Kissee clarified that he asked for Abbas's registration, and when Abbas emphasized that he was searching for his insurance, Officer Kissee asked Abbas to step out of the car and he did. Officer Kissee moved Abbas, unrestrained, to a place near his patrol car.

Abbas asked why he was being pulled over, reiterating that he missed his turn and stating that everyone in this area knows him. Officer Kissee again told Abbas that if he was so familiar with the area, it seemed suspicious that he would miss the turn while traveling at such a slow rate of speed. Officer Kissee then returned to the open driver's side door with his flashlight, looked around quickly, and then stopped to look more closely at the floorboards. He asked Abbas if he ever had raw marijuana in the car because he sees "green specks" all over the floorboard. Abbas denied ever having marijuana in the car. To further investigate, Officer Kissee called for a canine drug-sniffing unit.

At 8:25 p.m., Corporal Garber and Canine Officer Butch arrived. Corporal Garber turned off the car and stopped Abbas's cell phone video recording. He then led Butch around Abbas's car, and Butch indicated that there were drugs on the driver's side. Upon Butch's alert, Officer

2

Kissee searched Abbas's car for marijuana. When nothing was found, he searched Abbas—a search that also revealed nothing. The stop was concluded at 8:42 p.m., and Abbas was sent on his way without a ticket.[1]

## Procedural History

In April 2019, Plaintiff, proceeding pro se, sued the Hobart Police Department, alleging that his Fourth Amendment rights were violated during two separate 2019 traffic stops: one in January, and one "[a] few months later[.]" [DE 1]. Initially, Plaintiff sought to enjoin the Department from "violating people[']s rights", "profiling people", and initiating illegal traffic stops and conducting illegal searches. [*Id.*]. The Department moved to dismiss the complaint for failure to state a claim, arguing that the January incident was time-barred. [DE 9]. In response, Plaintiff filed an amended complaint, providing the date of the second incident: May 8, 2019. [DE 13]. In response, the Department refiled their Motion to Dismiss [DE 19], and Plaintiff, now with representation, filed his Response [DE 26]. On August 18, 2021, Judge Rodovich ruled that Plaintiff's § 1983 suit for the January traffic stop was time-barred, but Plaintiff could proceed with his claim based on the May 2019 traffic stop. [DE 27].

In February 2022, Plaintiff filed the Second Amended Complaint, this time alleging that the Department's failure to properly supervise or train its officers resulted in violations of Plaintiff's Fourth, Eighth, and Fourteenth Amendment rights. [DE 38]. In addition to injunctive relief, Plaintiff was now seeking compensatory and punitive damages. [*Id.*]. The Department filed its Answer [DE 47] and a Motion for Summary Judgment [DE 59]. The issue was fully briefed when the Court issued a sua sponte order dismissing the case because under Indiana law, police departments cannot be sued. [DE 69]. Plaintiff was allowed leave to file a Third Amended

---

[1] The parties dispute whether Abbas was given a warning, but the dispute is immaterial.

Complaint where he substituted the City of Hobart, Indiana (hereinafter, "Defendant") for the Department. [DE 73]. Defendant answered in August 2023. [DE 77]. On November 16, 2023, Defendant filed its Motion for Summary Judgment. [DE 81]. After the Motion was fully briefed, in February 2024, Plaintiff's attorney filed a motion to withdraw. [DE 92].

This case, pending for three years, was reassigned to this Judge on March 25, 2024. [DE 95]. The attorney withdrawal hearing was held on April 4, 2024, Plaintiff's current counsel filed his appearance on May 7, 2024, and the Court heard oral argument on June 11, 2024.

## Legal Standard

### A. Summary Judgment

A court shall grant summary judgment when the evidence, viewed in a light most favorable to the nonmoving party, presents no genuine dispute as to any material fact. Fed. R. Civ. P. 56. A fact is material if, under the relevant substantive law, it is outcome determinative. *Anderson v. Liberty Lobby*, 447 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In other words, if the evidence concerning a dispositive fact is not in dispute, the moving party is entitled to summary judgment. To survive a motion for summary judgment, there must be enough evidence "favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 250 (citations omitted).

## Discussion

Plaintiff's Section 1983 claims are being brought against the City of Hobart via the theory of municipal liability established in *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978). Because "a municipality cannot be liable under *Monell* when there is no underlying

4

constitutional violation by a municipal employee", the Court will first analyze whether, viewing the facts in a light most favorable to Plaintiff, a reasonable jury could determine that he suffered a constitutional violation. *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010).

### A. Plaintiff's Fourth Amendment Claims

The Fourth Amendment provides that people's right to be secure against unreasonable searches and seizures shall not be violated. U.S. Const. amdn. IV. "[T]he ultimate touchstone of the Fourth Amendment is reasonableness." *United States v. Cole*, 21 F.4th 421, 427 (7th Cir. 2021) (citations omitted). "Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances*.*" *Ohio v. Robinette*, 519 U.S. 33, 39 (1996). "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 817 (1996).

Plaintiff alleges that Officer Kissee violated his Fourth Amendment rights by stopping him without reasonable suspicion of a traffic violation, unnecessarily prolonging the stop by calling for a dog sniff without probable cause and searching Plaintiff's car and person without probable cause. The Court addresses each alleged violation in turn.

#### a. The Initial Stop

A traffic stop is a seizure, so it must be reasonable under the circumstances. *Whren*, 517 U.S. at 809. A reasonable traffic stop must be "justified at its inception, and reasonably related in scope to the circumstances which justified the interference in the first place." *Hiibel v. Sixth Jud. Dist. Ct. of Nevada, Humboldt Cnty.*, 542 U.S. 177, 185 (2004). Traffic stops are brief, like *Terry* stops, so they require only reasonable suspicion of a traffic violation—not probable cause. *Rodriguez v. United States*, 575 U.S. 348, 354; *Navarette v. California*, 572 U.S. 393, 396–97 (2014); *see also Terry v. Ohio*, 392 U.S. 1 (1968).

5

"The Fourth Amendment's ultimate touchstone is 'reasonableness.'" *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006). When assessing the reasonableness of a traffic stop, the key inquiry is whether an officer's belief that a traffic law has been violated is a reasonable one. *See United States v. Simon*, 937 F.3d 820, 829 (7th Cir. 2019) (citing *United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005)) ("If an officer reasonably thinks he sees a driver commit a traffic infraction, that is a sufficient basis to pull him over without violating the Constitution."); *United States v. Cashman*, 216 F.3d 582, 586 (7th Cir. 2000) (citing *Whren*, 517 U.S. at 817-18) ("[S]o long as the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense, the officer has probable cause to stop the driver."); *United States v. Lewis*, 920 F.3d 483, 489 (7th Cir. 2019) ("The officer is not the judge. Whether the driver actually committed a traffic infraction is irrelevant for Fourth Amendment purposes so long as there was an objective basis for a reasonable belief he did.").

Here, the parties dispute whether Plaintiff misused his turn signal in violation of Indiana's turn signal law. At the time, Indiana law was that "[a] signal of intention to turn right or left shall be given continuously during not less than the last two hundred (200) feet traveled by a vehicle before turning or changing lanes." *See* IND. CODE § 9-21-8-25, *repealed by* 2022 Ind. Acts P.L. 118-2022, Sec. 23 (effective Jan. 1, 2023). Officer Kissee's police report and deposition testimony states that he believes Plaintiff misused his turn signal by indicating a left turn, then quickly switching it to the right signal, and the right signal was within 200 feet of Plaintiff's turn onto Lukes Court. Kissee Police Report [DE 82-5]; Kissee Dep. Tr. 29:13-24 [DE 82-3]. In his deposition, he explains how he made that assessment: "[Police officers] try to use reasonable judgment as to what 200 feet is. . . . [I]n this case, I just speak for myself, it certainly was not within 200 feet. 200 feet is a pretty good distance. I actually have walked out 200 feet

just to get an idea in my career and I can sit here, more than confident, and tell you that it was not 200 feet that that turn signal was indicated." Kissee Dep. Tr. 31:24-32:13 [DE 82-3]. Plaintiff asserts in his affidavit that he "signaled to turn onto Lukes Ct more than 200 feet prior to the turn and at no time while traveling south on N Lake Park Avenue did [he] turn [his] left turn signal on." Abbas Aff. ¶¶ 15-17 [DE 87]. Even taking this statement as true, all it would establish is that Plaintiff complied with the turn signal statute at the time, which is not the key inquiry. As set forth above, the key inquiry is whether there was an objective basis for Officer Kissee's reasonable belief. *Simon*, 937 F.3d at 829; *Cashman*, 216 F.3d at 586; *Lewis*, 920 F.3d at 489.

Plaintiff also offers his video recording, which depicts the initial conversation between himself and Officer Kissee. Pl.'s Ex. 3A [DE 86]. Plaintiff argues that Officer Kissee's failure to explain, in the video, why he initiated the stop is evidence that he did so without reasonable suspicion. But the events depicted in the video occurred *after* the decision to initiate the stop was made, and probable cause is not a "retrospective, outcome-based standard." *Simon*, 937 F.3d at 834 (citing *Bridewell v. Eberle*, 730 F.3d 672, 675 (7th Cir. 2013)). Therefore, the video evidence, like the other evidence in the record, does not undermine the objective reasonableness of Officer Kissee's belief, which again, is the key inquiry. Consequently, the Court finds that there is not enough evidence in the record for a reasonable jury to decide that the initial stop was unconstitutional. Since the traffic stop was lawfully initiated, we next discuss whether it was unreasonably prolonged.

### b. The Canine Drug Sniff

The Supreme Court has held that "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission.'" *Rodriguez*, 575 U.S. at 354 (quoting *Illinois v. Caballes,* 543 U.S. 405, 407 (2005)). Tasks within that mission include "determining

whether to issue a traffic ticket" and pursuing "'ordinary inquiries incident to [the traffic] stop.'" *Id.* at 355, (quoting *Caballes*, 543 U.S. at 408). Ordinary inquiries include travel-plan questions and checking a driver's license and registration. *Cole*, 21 F.4th at 428-29.

Here, Officer Kissee begins by asking Plaintiff travel-plan questions, such as where he was going. When Plaintiff responded that he was going to his mother's house and that he was well-known in the area, Officer Kissee found it implausible that one would miss a familiar turn while traveling at such a slow rate of speed. Pl.'s Ex. 3A [DE 86]. The two argued over whether that interpretation was reasonable. Officer Kissee proceeded with inquiries ordinary to a traffic stop when he asked Plaintiff for his license and registration. When this exchange did not go smoothly, Plaintiff was asked to exit the vehicle and he complied. After Plaintiff exited his vehicle, Officer Kissee saw what he believed to be raw marijuana on the floorboard of the car.

The Supreme Court held in *Caballes*, that a canine sniff during a lawful traffic stop does not violate the Fourth Amendment, even if the officer has *no* reasonable suspicion of drug activity. *Caballes*, 543 U.S. at 407. Here, it was lawful for Officer Kissee to extend the traffic stop and call for a drug sniff because upon observing "green specks" on the floorboard of the car, which he believed to be raw marijuana, he had reasonable suspicion of possible drug activity. Moreover, his prior observations were now contextualized: he saw someone driving very slowly, with out-of-state license plates, and based on his experience he thought that Plaintiff's turnaround in the apartment complex was an attempt to evade police. Officer Kissee had the necessary reasonable suspicion to call for the canine unit.

Plaintiff also argues that the canine drug-sniff constituted a search, and that a 23-minute traffic stop for misuse of a turn signal was unreasonable. The Court disagrees with both assertions. First, Canine Officer Butch's sniff around the perimeter of Plaintiff's car was not a

8

search. "It is well-established that the use of a drug-sniffing canine in the course of a traffic stop does not constitute a search." *United States v. Taylor*, 596 F.3d 373, 376-77 (7th Cir. 2010). But even if it were, as outlined above Officer Kissee had the requisite reasonable suspicion of possible drug activity to call for the sniff.

As for the duration: the use of a drug-sniffing canine "may impact the determination of whether a seizure is reasonable if the use of the dog causes a delay." *Taylor*, 596 F.3d at 377. A canine drug-sniffing unit arriving within "20 to 30 minutes" is not unreasonable delay. *United States v. Lickers*, 928 F.3d 609, 617 (7th Cir. 2019). Corporal Garber and Butch arrived five minutes after Officer Kissee observed the "green specks" that based on his experience appeared to be marijuana. This is not an unreasonable delay, and Plaintiff offers no evidence to suggest the sniff took longer than necessary. Canine Officer Butch's alert provided Officer Kissee justification to search Plaintiff's vehicle and person. Here again, nothing in the record suggests the search of the vehicle was unreasonably long.

For this portion of the stop, nothing in the record would allow a reasonable jury to find that Plaintiff suffered a constitutional violation. The stop was not unnecessarily extended by Officer Kissee's travel-plan questions, Plaintiff being asked to step out of the car was reasonable under the circumstances, Officer Kissee was justified in calling for a canine drug-sniff, and the drug-sniff and searches pursuant to it did not cause unreasonable delay. Moreover, Plaintiff was not restrained throughout the drug-sniff. Kissee Dep. Tr. 46:15-17 [DE 82-3].

c. **The Search of Plaintiff's Person**

Plaintiff alleges that during the search of his person, Officer Kissee "touch[ed] [Plaintiff's] private areas." [DE 73]; Abbas Aff. ¶ 24 [DE 87]. Defendant points to Officer Kissee's deposition testimony in support of its contention that the Officer did not touch Plaintiff

9

in that area beyond what was necessary to effectuate the search. Kissee Dep. Tr. 47:5-48:9 [DE 89]. Officer Kissee did not recall this specific search, nor was it detailed in his report, but he recounted his general pat-down practice: "Absent any particular facts to suggest somebody would have any narcotics hidden in their like groin area[,] [w]e don't go—we don't go like in their underwear or touch them anywhere like that. We're simply running the hands up the inside of their leg, feeling around the general area of their groin, not specifically grabbing or touching anything. That's just uncomfortable for us and the person, we know that."). *Id.*

Taking the Plaintiff's version as true, the Court fails to find a Constitutional violation. Plaintiff offers nothing more than the fact that he his genitals were touched by the Officer. The Court recognizes the gravity of the embarrassment or discomfort brought about by even an incidental touching in that area. But here, there is no description of the degree or extent of the touching, or any lasting mental or physical effects. Plaintiff's assertion is too vague for a factfinder to discern the extent of the injury, if any, and therefore assess its reasonableness. Even after accepting these facts in a light most favorable to Plaintiff, there is no Constitutional claim to send to a jury.

### d. The *Monell* Claim

Section 1983 provides a civil remedy against any "person" who violates a plaintiff's federal civil rights while acting under color of state law. *Thomas v. Neenah Joint School District*, 74 F.4th 521, 523 (7th Cir. 2023) (citing 42 U.S.C. § 1983). In *Monell*, the Supreme Court held that municipalities are considered "person[s]" under § 1983. 436 U.S. at 690 (1978). However, municipalities may only be sued "for their own violations of federal law . . . and cannot be held vicariously liable for the constitutional torts of their employees." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2019) (citing *Monell*, 436 U.S. at 691-94).

For a municipality to be liable under *Monell*, there must be (1) a deprivation of a constitutional right; (2) the deprivation is traceable to a municipal action, i.e., a policy or custom, such that the challenged conduct is properly attributable to the municipality itself; (3) "the policy or custom demonstrates municipal fault, i.e., deliberate indifference"; and (4) the municipal action was the moving force behind the constitutional violation. *Thomas*, 74 F.4th at 524 (citations omitted). These are to be "'scrupulously applied' to avoid a claim for municipal liability backsliding into an impermissible claim for vicarious liability." *Id.* (citations omitted).

If Plaintiff demonstrated a constitutional violation, he would next need to connect it to a policy or custom of Defendant. Such action could be "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute 'custom or usage' with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Juniel v. Park Forest-Chicago Heights School Dist. 163*, 176 F.Supp.2d 842, 849 (N.D. Ill. 2001) (citations omitted).

In the Third Amended Complaint, Plaintiff alleges that Defendant failed to enforce an express policy, and that Defendant failed to properly supervise or train its police officers. Plaintiff never identifies an express policy that Defendant failed to enforce. Moreover, he never alleges or articulates how either Officer Kissee or Corporal Garber might have had policy-making authority. Thus, he may only advance on the theory that Defendant engaged in a practice so widespread that it is tantamount to a custom. Plaintiff alleges that Defendant's failure to properly train its officers in racial profiling and implicit bias is the unconstitutional municipal action. To be successful, a failure to train theory requires a finding that the individual officers are liable on the underlying substantive claim. *Tesch v. Cty. of Green Lake*, 157 F.3d 465, 477 (7th

11

Cir. 1998). As discussed, the Court has determined there is no underlying constitutional violation.

Even assuming there was an underlying constitutional violation, Plaintiff's *Monell* claim would still fail. If the officers' actions violated the constitution, Plaintiff's next task would have been to demonstrate the City's failure to properly train its officers. In support of that theory, Plaintiff points to Officer Kissee's lack of racial profiling and implicit bias training, and Plaintiff's police encounter during the January 2019 traffic stop. Here, these two pieces of evidence are insufficient to establish a pattern or practice necessary for liability under *Monell*. Plaintiff does not adequately develop his argument that one officer's lack of training on racial profiling and implicit bias should be (1) impugned to an entire police department, and (2) necessarily means that race motivates Hobart Police Officers to effect unconstitutional practices. For its part, Defendant responded to Plaintiff's argument by pointing out that Officer Kissee has never been disciplined. Plaintiff did not offer any evidence rebutting this.

As for the January 2019 stop, Plaintiff is permitted to use other incidents as evidence of a pattern or practice. But here Plaintiff makes no attempt to explain how this incident is evidence of a pattern or practice. The January 2019 incident was a separate incident involving different officers. Allegations of "a few sporadic examples of an improper behavior" are not enough to establish municipal action. *Flores v. City of South Bend*, 997 F.3d 725, 733 (7th Cir. 2021). To establish that the City of Hobart's action, or inaction, amounts to a de facto policy with unconstitutional results, Plaintiff needs more evidence.

Because Plaintiff fails to articulate a pattern or practice, or to the extent one is articulated fails to support it with evidence, there is no conduct, pattern, or practice for Plaintiff to trace back to the municipality of Hobart, Indiana.

Ultimately, Plaintiff's argument is that the City of Hobart was indifferent to a police policy of initiating pretextual traffic as a way to search for a drugs and that this motive is relevant in determining the reasonableness of a Fourth Amendment violation. *See Taylor*, 596 F.3d at 377. "That argument has been repeatedly rejected by the Supreme Court." *Id.* Without a constitutional injury, a developed evidentiary record, or any material facts in dispute, Plaintiff's Fourth Amendment *Monell* claim should not proceed to a jury.

### B. Plaintiff's Fourteenth Amendment Claim

Plaintiff also claims the stop was racially motivated in violation of the Equal Protection Clause of the Fourteenth Amendment. "Racial profiling, or selective enforcement of the law, is a violation of the Equal Protection Clause." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 303 (7th Cir. 2011) (citing *Chavez v. Ill. State Police*, 251 F.3d 612, 635 (7th Cir. 2001)). To survive summary judgment on this claim, a plaintiff must provide evidence that a defendant's actions had a discriminatory effect and were motivated by a discriminatory purpose. *See Chavez*, 251 F.3d at 635-36. To establish discriminatory effect, a plaintiff is required to show that he is a member of a protected class, that he is otherwise similarly situated to members of the unprotected class, and that plaintiffs were treated differently from members of the unprotected class. *Id.* at 636. To establish discriminatory intent, a plaintiff must show that decisionmaker acted with discriminatory purpose." *Id.* at 645.

Here, Plaintiff's evidentiary support appears to be (1) the January 2019 traffic stop, (2) Officer Kissee's deposition testimony that he never received racial profiling or implicit bias training, and (3) that at Officer Kissee knew Plaintiff was black when he started following him.

It is unclear how or why the January 2019 traffic stop supports Plaintiff's claim that he is subjected to pretextual traffic stops where members of an unprotected class are not. As discussed

13

above, it was a separate incident with different officers. And Plaintiff was the subject of both stops. The Court fails to see how this could be an example of differential treatment because Plaintiff does not provide an instance of someone being treated differently. The same issue is present in the deposition testimony evidence. Officer Kissee testified in his deposition that he never received racial profiling or implicit bias training. But again, Plaintiff fails to show how this evinces discriminatory intent of the Defendant. For one, this establishes only that Officer Kissee has not received such training. Plaintiff does not point to any examples, or even statistics, showing that officers that do not receive such training do their jobs with discriminatory intent. Finally, Plaintiff baldly asserts that Officer Kissee knew Plaintiff was black the moment he started following him and that is why Plaintiff was pulled over. Even if this was true, Plaintiff does not adequately tie it to the City of Hobart, or to establishing that this Officer's racial motivation manifested with disparate treatment.

Taken together, the foregoing evidence fails to establish an underlying Fourteenth Amendment claim and, consequently, a *Monell* claim. Plaintiff does not articulate how his evidence establishes that he was treated differently from members of a protected class or how this evidence establishes discriminatory intent of Defendant. For these reasons, Plaintiff's Fourteenth Amendment claim fails.

### C. Plaintiff's Eighth Amendment Claim

In the Third Amended Complaint, Plaintiff does not specifically set forth an Eighth Amendment violation, but he uses the words "cruel and unusual punishment." Plaintiff abandoned this claim in his Response to Defendant's Motion for Summary, and at oral arguments the parties agreed this claim should be dismissed. So, to the extent there was an Eighth Amendment claim against Defendant, it is dismissed with prejudice.

## Conclusion

The Court hereby **GRANTS** Defendant City of Hobart's Motion for Summary Judgment [DE 81]. The Court **DIRECTS** the Clerk of Court to enter judgment against the Plaintiff Devonte Abbas and in favor of the Defendant City of Hobart. The Plaintiff takes nothing by his complaint.

**SO ORDERED.**

ENTERED: July 22, 2024

/s/ GRETCHEN S. LUND
Judge
United States District Court